924

PATRICK et al., Public Utilities Commission of District of Columbia, v. SMITH.

No. 5168.

Court of Appeals of District of Columbia.
Argued Nov. 4, 1930.
Decided Dec. 1, 1930.

Robert E. Lynch and William A. Roberts, both of Washington, D. C., for appellants.

Leon Robbin and Jacob Milwit, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice.

The appellee, as plaintiff below, brought suit to enjoin the Public Utilities Commission of the District of Columbia from enforcing a certain regulation adopted by it, whereby he would be required to furnish a bond or indemnity insurance or a statement of financial responsibility in order to secure a license to operate his taxicab within the District. It is conceded that the taxicab was to be operated as a common carrier of passengers for hire; and that appellee was denied a license to operate it within the District unless he complied with the regulation aforesaid. The controlling question in the case is whether the commission possesses the lawful authority to make and enforce such a regulation.

The lower court held that the commission did not possess such authority, and enjoined its enforcement. Whereupon this appeal was brought.

The Public Utilities Commission of the District of Columbia was created by section 8 of an Act of Congress approved March 4, 1913 (37 Stat. 974). The powers and duties of the commission are expressly set forth in that section. The provisions which are cited in behalf of the commission as authority for the regulation in question are to be found in paragraphs 2, 92, and 96 of the section.

Paragraph 2 provides that every public utility doing business in the District of Columbia is "required to furnish service and facilities reasonably safe and adequate and in all respects just and reasonable."

Paragraph 92 provides that the provisions of the section are to be interpreted and construed liberally "in order to accomplish the purposes thereof," and further provides that the commission shall have, in addition to the powers specified and mentioned, all additional, implied, and incidental powers proper and necessary to carry out the powers specified in the section; and further provides that no rules, ordinances, acts, or regulations of the commission shall "be declared inoperative, illegal, or void for any omission of a technical nature in respect thereto."

Paragraph 96 provides that, if the commission finds "that repairs, improvements, or changes in any * * * facilities of any common carrier ought reasonably to be made, or that any addition of service or equipment ought reasonably to be made thereto, or that the vehicles * * * of any * * * common carrier are unclean, insanitary * * * or that any addition ought reasonably to be

made thereto, in order to promote the comfort or convenience of the public or employees, or in order to secure adequate service or facilities, the commission shall have power to make and serve an order directing that such repairs, improvements, changes, or additions to service or equipment be made within a reasonable time. * * * "

Acting under this alleged authority, the commission in December, 1929, issued an official order entitled "Rules and Regulations Governing the Equipment and Operation of Motor Vehicles * * * Operated for Hire in the District of Columbia," reading in part as follows:

"Section 9(a) No person, firm or corporation shall operate any motor vehicle, as herein defined, unless and until the person, firm or corporation shall:

"(1) File with the Commission a sworn statement showing the ability of the person, firm or corporation to pay all damages which may result from any and all accidents due to the negligent use or operation of such vehicle; or

"(2) File with the Commission security, indemnity or a bond guaranteeing the payment by the person, firm or corporation of all such damages, or

"(3) Insure to a reasonable amount the person's, firm's or corporation's liability to pay such damages; and unless the person, firm or corporation shall

"(4) File with the Commission, as often as the Commission shall in writing demand, in form prescribed by the Commission, evidence of the person's, firm's or corporation's compliance with the provisions of this section."

The commission also added a statement that it will accept as compliance with subparagraph No. 1 a sworn statement, subject to verification, showing that the person making proof of financial responsibility has available net assets of a permanent character which would be sufficient to attach under judgment in amounts beginning with $8,000 for the operation of 5 cabs or less, and increasing to $65,000 for the operation of over 200 cabs.

The commission will accept as compliance with subparagraph No. 2 a bond of the applicant with a solvent and responsible surety company or two personal sureties, to be approved by the commission that the applicant will pay all final judgments recovered against him for injury to one person up to $5,000, $10,000 for injury to more than one person, and $1,000 for property damage

in any one accident, from the operation of his vehicles, providing, however, that an applicant seeking a license may file a bond in sums scheduled according to the number of motor vehicles for which he applies.

The commission will accept, as compliance with subparagraph No. 3, a policy or certificate of liability insurance for each motor vehicle for which a license is sought, approved by the commission, insuring the applicant in the sum of $5,000 for injury to one person, $10,000 for injury to more than one person, and $1,000 for property damage in any one accident, through the operation of the licensed vehicle.

We are of the opinion that the commission exceeded the powers granted to it by the act in promulgating the regulation in question, and accordingly hold that the decree of the lower court enjoining its enforcement is right.

The provisions of paragraphs 2, 92, and 96, of section 8, supra, plainly relate to the material equipment and facilities of all utilities within the District and their actual physical operation; also to the efficiency of the service rendered by them, and the regulation of the rates charged by them. The act contains no mention or implication of any authority delegated to the commission to make or enforce such a regulation as is involved herein. And, in view of the fact that such a regulation necessarily imposes a substantial tax upon a class of persons within the District, which may be diminished or increased at the discretion of the commission, it is not to be presumed that such authority would be granted by mere implication in the act.

■■ It must be remembered that the Congress of the United States exercises exclusive legislative powers within the District of Columbia, and the Public Utilities Commission is merely an administrative agency. In District of Columbia v. Bailey, 171 U. S. 161, 176, 18 S. Ct. 868, 874, 43 L. Ed. 118, Mr. Justice White, speaking for the Supreme Court of the United States, said: "The necessary operation of these provisions of the statutes is to cause the District commissioners to be merely administrative officers, with ministerial powers only. The sums of the municipal powers of the District of Columbia are neither vested in nor exercised by the District commissioners. They are, on the contrary, vested in the congress of the United States, acting pro hac vice as the legislative body of the District, and the commissioners of the District discharge the functions of administrative officials."

In Coughlin v. District of Columbia, 25 App. D. C. 251, the commissioners of the District of Columbia, under an act of Congress empowering them to make all regulations as they might deem necessary for the protection of the lives, limbs, health, and comfort of all persons within the District, passed an ordinance requiring the removal of snow and ice from the sidewalks. Coughlin was convicted of a violation of the regulation, and appealed. This court sustained the appeal, and among other things said: "That various municipalities may have exercised such power, as appears from various municipal ordinances collated in the brief on behalf of the appellee, is not to the point. Municipalities are usually vested with quasi legislative powers, among them the sovereign power of taxation and assessment, and from the fact that municipal ordinances are elsewhere to be found, analogous to the so-called regulation here in question, it is not to be inferred that similar powers exist in the commissioners of the District of Columbia. The commissioners are not the municipality, but only the executive organs of it; and Congress has reserved to itself, not only the power of legislation in the strict sense of the term, which it cannot constitutionally delegate to anyone or to any body of men, but even the power of enacting municipal ordinances, such as are within the ordinary scope of the authority of incorporated municipalities. It has delegated to the commissioners simply the power of making 'police regulations,' and only such police regulations as are usual and commonly known by that designation. * * * "

See, also, United States ex rel. Daly v. Macfarland, 28 App. D. C. 552; Fay v. Macfarland, 32 App. D. C. 295; Newman v. Willard's Hotel Co., 47 App. D. C. 323; Hazard v. Blessing, 55 App. D. C. 114, 2 F. (2d) 916; 26 R. C. L. 676.

The decree of the lower court is affirmed, with costs.