Solomon C. **CURTIS**, Appellant,

v.

**DISTRICT OF COLUMBIA**, a Municipal Corporation, Cora A. Geiger and Elizabeth G. Delaney, Appellees.

No. 19428.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 15, 1965.

Decided Feb. 1, 1966.

Petition for Rehearing En Banc
Denied March 24, 1966.

Prettyman, Senior Circuit Judge, dissented.

See also 117 U.S.App.D.C. 265, 328 F.2d 566.

Mr. Herbert P. Leeman, Washington, D. C., for appellant.

Mr. Richard W. Barton, Asst. Corp. Counsel for District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel at the time of argument, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellee District of Columbia.

Mr. Cornelius H. Doherty, Washington, D. C., for appellees Geiger and Delaney.

Before BAZELON, Chief Judge, PRETTYMAN, Senior Circuit Judge, and FAHY, Circuit Judge.

FAHY, Circuit Judge:

This appeal is from a judgment entered on a jury verdict for the defendants District of Columbia, Cora A. Geiger and Elizabeth G. Delaney, appellees in this court. Appellant, plaintiff in the District Court, sued for damages for injuries consequent upon a fall when walking over a vault the covering of which was part of a public sidewalk in front of property owned by the individual defendants. He alleged that his fall was caused by the projection of a hinge of the covering about an inch above the level of the sidewalk paving. This he contended violated the duty of the District of Columbia to keep the streets in a reasonably safe condition, District of Columbia v. Nordstrom, 117 U.S.App.D.C. 165, 167,

327 F.2d 863, 865, and of the individual defendants to use due care to maintain in a safe condition a structure placed in the sidewalk for their own special use. Merriam v. Anacostia National Bank, 101 U.S.App.D.C. 190, 247 F.2d 596; Robertson v. Liggett Drug Co., 81 Ga.App. 850, 60 S.E.2d 268.

■ We first notice appellant's contention that the jury was invalidly composed. He objected that the panel from which the jury was to be selected consisted almost entirely of employees of the United States Government. We find no error in the overruling of this objection. D. C. Transit System, Inc. v. Slingland, 105 U.S.App.D.C. 264, 266 F.2d 465, 72 A.L.R.2d 1290, cert. denied, 361 U.S. 819, 80 S.Ct. 62, 4 L.Ed.2d 64. The Slingland case in turn relied upon United States v. Wood, 299 U.S. 123, 57 S.Ct. 177, 81 L. Ed. 78. And see Frazier v. United States, 335 U.S. 497, 69 S.Ct. 201, 93 L. Ed. 187, rehearing denied, 336 U.S. 907, 69 S.Ct. 488, 93 L.Ed. 1072.

■ Appellant also claims error in the refusal of the court to permit his counsel to read to the jury in rebuttal argument plaintiff's Exhibit 1, consisting of a letter written by his counsel to the Commissioners of the District of Columbia. It was dated five days after the fall and, in compliance with D.C.Code § 12–208, advised the Commissioners of plaintiff's claim. Permission to read the letter to the jury was sought as a means of answering a statement to the jury by counsel for the individual defendants that a witness for plaintiff "concocted" certain testimony about the weather conditions on the day of the fall. Aside from other possible objections to its admissibility the contents of the letter did not rebut the argument referred to.

A final contention has more substance. Plaintiff offered in evidence Article 406–

22(h) of the 1951 Building Code for the District of Columbia, which reads:

The paving over vaults shall be laid according to the specifications of the Director of Highways for surface paving and shall conform with the established grades. All such coverings shall be so constructed as to be flush with the pavement, and have a roughened surface to minimize slipping by persons passing over them. Pavements over vaults must be laid at the expense and risk of the owners of abutting property, but not until a special permit or order has been issued by the Director of Highways. The roof of a vault between the curb and building lines shall at no place be less than 4 inches below the approved side walk grade at that point.

The vault had been constructed prior to the adoption of this provision, for which reason the court, after initially admitting the regulation, on reconsideration excluded it as not retroactive in application. The court relied upon Jones v. District of Columbia, D.C., 212 F.Supp. 438. The fire safety regulations there under consideration were held retroactive because their authorizing legislation provided that they covered structures existing when the legislation became effective. The court was not called upon to decide the question whether building regulations authorized by D.C.Code § 1–228,[1] were or were not retroactive. Therefore, what was said in the opinion regarding the present regulations, resting upon Section 1–228, was not necessary to the decision. And our affirmance appearing in Jones v. District of Columbia, 116 U.S.App.D.C. 301, 323 F.2d 306, neither discusses nor decides anything with respect to retroactivity.

■ The legislative authority for the building regulations, D.C.Code § 1–228,

1. § 1–228 Building Regulations.

The Commissioners of the District of Columbia, are authorized and directed to make and enforce such building regulations for the said District as they may deem advisable.

Such rules and regulations made as above provided shall have the same force and effect within the District of Columbia as if enacted by Congress. (June 14, 1878, 20 Stat. 131, ch. 194, § 1 in part, § 2.)

is broadly worded. But we lay aside the question whether this permits the Commissioners to apply building regulations retroactively; for in any event the language of Article 406–22(h) and the Building Code itself, insofar as here pertinent, do not indicate that the particular Article was intended to be applied to structures previously installed. Thus maintenance of an existing condition not in conformity with it would not constitute a violation of the Article.

The foregoing does not end the problem; for the regulation, though not violated, was evidence of a standard which the jury could consider in determining whether the defendants had exercised due care according to their respective responsibilities. The regulation should have been admitted accompanied with an instruction, if requested, that it could be considered with other evidence but only for the limited purpose we indicate. Experience and expertise had combined to lead the Commissioners to decide in formulating the 1951 Building Code that safety would be served by requiring vault coverings in sidewalks to be flush with the sidewalk paving. This action of the responsible public authorities is relevant in determining the common law standard of care to be observed by defendants for the safety of pedestrians. As we have said, the individual defendants—and also the District of Columbia—cannot be held to have violated the regulation, for which reason negligence cannot be predicated merely upon nonconformity with its provisions. But the advent into public law of this evidence of a standard bearing upon the issue of due care need not be entirely ignored in this case. As we have said in a somewhat comparable situation in Edmonds, Inc. v. Vojka, 118 U.S.App. D.C. 109, 111, 332 F.2d 309, 311,

> This [the 1951] code was formulated long after the building was constructed, and was not retroactive, so that of course it was not violated. Nevertheless, extensive evidence re-

garding its provisions was permitted to be introduced on the theory that the provisions evidenced a standard of accepted architectural practice by which to measure whether or not McPherson [owner of the building] had exercised due care in maintaining the stairway, though, as such, the code was not violated. This theory of admissibility finds support in 2 *Harper & James*, Torts § 17.6 at 1006 (1956). We think the evidence was admissible as relevant to the degree of care required; but to avoid jury confusion the court should itself have made clear that non-conformance with the standards of the code was not evidence of code violation. The danger of misunderstanding by the jury in a matter of critical importance on the issue of negligence required such an instruction if requested, and McPherson adequately requested it.

In Prosser, *Torts*, § 35, at 203 (3d ed. 1964), the following appears on the subject of the evidentiary value of a statutory standard, though the statute is not directly applicable as a protection to the particular plaintiff:

> * * * where the statute does set up standard precautions, although only for the protection of a different class of persons, or the prevention of a distinct risk, this may be a relevant fact, having proper bearing upon the conduct of a reasonable man under the circumstances, which the jury should be permitted to consider. There is, in other words, a statutory custom, which is entitled to admission as evidence.

And to similar effect see James, "Statutory Standards and Negligence in Accident Cases," 11 La.L.Rev. 95, 114–116 (1950), and Alexander, "Legislation and the Standard of Care in Negligence," 42 Canadian B. Rev. 243, 268–271 (1964).[2]

---

2. That the view we take of the admissibility of the regulation is not one which can be said to be uniformly accepted by the

authorities cannot be denied. See, for example, on a kindred aspect of the general problem, 2 Wigmore, *Evidence*, §

Our dissenting colleague would ignore the regulation altogether, although it has to do with the safety of sidewalk vault coverings. He relies in part upon his appraisal of the difficulty of remedying the previously existing situation. The record is silent as to this. No other case of its kind has come to our attention; and were we also to speculate we would incline to think vault coverings with hinges projecting an inch above the surrounding sidewalk pavement are not numerous in this City and could be made safer with little expense. We bear in mind too that these vaults are for the special use of the adjoining property owners.

Our position is construed in the dissent as promulgating a requirement as to the construction of previously existing vaults, which the Commissioners refused to do. But the Commissioners did not pass upon the evidentiary question. The District concedes that evidence of protrusion of the hinge was admissible on the issue of negligence. This correct position could not become incorrect by being described as though it were the promulgation of a requirement as to the construction of sidewalk vaults; so too such a description of our ruling on the admissibility of the regulation cannot render the ruling incorrect.

The Commissioners did not explicitly express an intention that the regulation would not apply to previously constructed vaults, though we hold that it does not so apply. Even had the Commissioners explicitly expressed this intention they would not thereby have taken from the court the responsibility of deciding the question as to the admissibility of the regulation in evidence. Since it is not interpreted to be retroactive, however, defendants are free of any consequences of violating the regulation, such as the penalties prescribed by Sections 109 and 109–A of the 1951 D.C. Building Code,[3] and the possibility that the trial court would instruct the jury that violation of a safety regulation constitutes negligence *per se*.[4]

The central fact is the Commissioners, the officials with expertise and duty in the matter, decided that in the interest of safety such protrusions should at least be prohibited in future construction. From this it follows that these safety provisions may appropriately be held competent, not in and of themselves as evidence of negligence, but as evidence of a standard by which the jury must measure the conduct of the defendants in determining whether they exercised that due care the law required in the situation.

The dissent recognizes that a question of evidence is for the court. Nevertheless it says that in deciding the question the court decides that it is unlawful for the previously existing condition to have been maintained. This conclusion is reached by reasoning that it is not lawful to be negligent and that to hold the regulation to be admissible, even for the limited purpose to which we confine it, is in effect to hold that defendants were negligent since the jury cannot be expected to distinguish between deciding for themselves the issue of negligence and being allowed to consider the regulation in determining the standard of care defendants should observe. By like reasoning the jury would be precluded from considering evidence that the hinge projected an inch above the pavement since if permitted to do so, as the District concedes to be proper, the jury might find such evidence persuasive as

461, at 500–01 (3d ed. 1940); and Finnegan v. Royal Realty Co., Cal.App., 204 P.2d 661, 666.

3. These provisions are carried over to the 1961 D.C. Building Code in § 3–173(a), (b).

4. If the Commissioners considered the matter they might well have decided against retroactivity for several reasons.

No doubt they would have balanced the possible though uncertain danger, of limited character, of vaults then existing against the burden of fines for noncompliance; the lack of need for alteration where the protrusions were slight; and doubt that Congress had authorized the Commissioners to make building regulations of this sort retroactive.

to negligence. Evidence is not held inadmissible because it might affect the decision on the issue as to which it is admissible. Moreover, the view that the jury cannot be relied upon properly to limit its consideration of the evidence as instructed by the court is not in conformity with our previous decisions distinguishing between evidence which itself proves negligence and that which in some manner bears upon the issue. See, e. g., Edmonds, Inc. v. Vojka, supra; Peigh v. Baltimore & O. R. Co., 92 U.S. App.D.C. 198, 204 F.2d 391, 44 A.L.R.2d 671; Hecht Co. v. McLaughlin, 93 U.S. App.D.C. 382, 214 F.2d 212. Compare Ross v. Hartman, 78 U.S.App.D.C. 217, 139 F.2d 14, 158 A.L.R. 1370.

The dissenting opinion, as we have noted, relies in part upon the difficulty of remedying the situation. Notwithstanding this partial reliance upon the economics of the problem rather than upon the rules of evidence, our brother, somewhat inconsistently we respectfully suggest, opposes our position by describing it as resting upon a thesis of public good serving the ends of a social theory that all personal injury should be a public burden, rather than maintaining negligence as the criterion of liability. Negligence is, indeed, the criterion of liability, if it is shown to be a proximate cause of the injury. Two of the defendants are individual property owners who have a special responsibility for the vault covering. They are not sued to shoulder a public burden and could not be made to do so. If there is to be recovery against them it must be upon proof of their own negligence as a proximate cause of injury. The other defendant, the District, is sued as the municipality responsible under well established law for the safety of the streets. It is not sued as a public body required to make whole a loss suffered as a result of injury for which it was not responsible.

Should the jury find against the defendants on the issue of negligence, recovery by plaintiff of compensatory damages for any injury suffered by reason of the fall would not follow unless the jury also found such negligence was a proximate cause of the injury. We intimate no view as to how the issue either of negligence or of proximate cause should be decided. We hold only that the regulation may be considered for the limited purpose we have stated on the ultimate issue of negligence.

Reversed and remanded.

PRETTYMAN, Senior Circuit Judge (dissenting):

I disagree with my brethren on this case.

I agree that the regulation (Article 406–22(h)) is not retroactive and therefore does not apply specifically to this case; the regulation itself is not violated. The court holds the regulation admissible as evidence of an official declaration defining one element of the due care required of property owners and the municipality lest they be liable in damages. The case concerns a hinge which protruded one inch above a vault-covering in the sidewalk. To reset it so as to make it "flush with a pavement" would be quite a job; indeed, as I see it, the installation of a different type of cover would be necessary. There is no discernible means by which the hinge alone could be lowered. Merely lowering the door would not cure the danger; pedestrians would still be liable to stumble over the protruding hinge. And, if the door were lowered so as to make the top of the hinge flush with the sidewalk, the whole door would be sunk below the surrounding sidewalk, creating a real danger. The Commissioners must have had these considerations in mind when they notably did not make the requirement applicable to existing vaults.

When the court says that failure to replace this hinge, or to retract its protrusion, is evidence of negligence on the part of the owner and of the District, it is doing what the Commissioners refrained from doing. While it casts its directive in the form of a ruling on evidence (and thus within its competence), it is really promulgating a requirement as to the construction of sidewalk vaults. How-

ever dissimilar the two rulings may be in abstract theory or in semantics, in actual practicality a ruling that protrusions on vault-coverings must be made flush with the pavement and a ruling that the presence of such a protrusion is evidence of negligence are the same. A person is required by law not to do that which is negligent. Certainly property owners will see little, if any, difference. And I think a jury would not grasp the fine distinctions embodied in the instruction required by my brethren. Once the regulation is in evidence, a jury would almost inevitably give it effect. Indeed I am not quite sure myself what the line is between giving effect to the regulation and considering it as evidence of negligence. I know that we enshroud the latter with references to "all other evidence", but I do not suppose any of us regard that tangle of varied circumstances as definitive. I know that many learned people glory in the refinements implicit in caveats directed to juries in the face of clear evidence, but I distrust them and would approve them only where absolutely necessary.

The authorities to which the court refers on this point, and others like them, are directed to the problem whether a safety statute or regulation applicable to the situation involved in a tort action may be used as evidence of negligence. The answer is debatable. Professor Wigmore, for example, condemns such use as unwise.[1] But, be that as it may, in the case at bar it is agreed the regulation did not apply. So that problem is not in the case. The proposition here is that the regulation, although not applicable, is admissible as evidence of negligence.

The only premise for admissibility in any event is that the enactment represents an official declaration of care required. If the regulation does not apply, or if the intention is not expressed, or if it be only vaguely expressed, admissibility is not supported by any authority I can find. It is cogently pointed out[2] that reading an intent into an enactment which fails to state it is carrying construction beyond permissible limits. The authors of the cited textbook use a striking figure of speech—"the will-o'-the wisp of a nonexistent legislative intention".[3] Professor Thayer once commented, "But this sort of speculation as to unexpressed legislative intent is a dangerous business, permissible only within narrow limits; and the tendency to overindulge it is responsible for much of the confusion in the law."[4] In the present case the Commissioners did not make their requirement applicable to existing vaults. It was not their judgment that such vaults were so dangerous as to require remedy. They did not express an intent that existing vaults not flush with the pavement were violative of required due care. Nevertheless, absent such an expression on their part, the court now speculates that it was their intention to classify those vaults as violative of the due care owed to the public by the property owners and the District. I think this is unwarranted speculation, and it is not supported by any authority I can find.

Undoubtedly the public good would be served if all these protrusions in iron doors on the sidewalks were made smooth. The thesis underlying the court's opinion, it seems to me, is that the public good rather than negligence should be the criterion of liability. This serves the ends of that social theory which holds that all personal injury should be a public burden. But, although I strongly believe in the capacity of the common law to change itself to accommodate new needs, it seems to me that this change from established standards is too cataclysmic to be wrought in a sudden shift. I hold to negligence as the criterion for liability for damage. I would leave the problem with the Commissioners, who

1. 2 WIGMORE, EVIDENCE § 461, par. 6, pp. 500–501 (3d ed. 1940).

2. See, e. g., 2 HARPER AND JAMES, TORTS § 17.6, p. 995, nn. 3, 4, 5 (1956).

3. Id., n. 5.

4. Public Wrong and Private Action, 27 HARV.L.REV. 317, 320, 321 (1914).

have the responsibility for the condition of the streets and also the power under Congressional grant to design and impose the remedies.

I would affirm.