96 N.J. Super. 539 (1967)
233 A.2d 654
HOWARD ELLIS, ADMINISTRATOR, ETC., PLAINTIFF-APPELLANT,
v.
ROSE CAPRICE AND THOMAS CAPRICE, DEFENDANTS-RESPONDENTS.
PATRICIA ELLIS, INFANT, ETC., PLAINTIFF-APPELLANT,
v.
ROSE CAPRICE AND THOMAS CAPRICE, DEFENDANTS-RESPONDENTS.
HOWARD FRIDAY, ETC., ET AL., PLAINTIFFS-APPELLANTS,
v.
ROSE CAPRICE AND THOMAS CAPRICE, DEFENDANTS-RESPONDENTS.
ALBERTA FRIDAY, ETC., PLAINTIFF-APPELLANT,
v.
ROSE CAPRICE AND THOMAS CAPRICE, DEFENDANTS-RESPONDENTS.
CHARLES ELLIS, ADMINISTRATOR, ETC., PLAINTIFF-APPELLANT,
v.
ROSE CAPRICE AND THOMAS CAPRICE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 6, 1967.
Decided September 1, 1967.
*543 Before Judges LEWIS, LABRECQUE and CARTON.
Mr. Bernard Chazen argued the cause for appellants (Mr. Irving J. Rosenberg, attorney; Messrs. Baker, Garber, Chazen & Duffy, of counsel; Mr. Nathan Baker and Mr. Chazen, on the brief).
Mr. Jerome S. Lieb argued the cause for respondents (Messrs. Harkavy & Lieb, attorneys; Mr. Abraham I. Harkavy and Mr. Lieb, of counsel).
The opinion of the court was delivered by LABRECQUE, J.A.D.
These five actions arose out of a tragic fire in a tenement house owned and operated by defendants, located on Wallace Street, Newark, on August 27, 1963, in which six persons died and five sustained personal injuries. Plaintiff Howard Ellis brought suit as administrator ad prosequendum of the estates of Pearl Ellis and Anthony Ellis, and, in a separate action, he sued as guardian ad litem of Patricia Ellis, and individually. Charles Ellis sued as administrator ad prosequendum of the estate of Ida Mae Ellis. Alberta Friday, the tenant in the third-floor apartment, sued individually and as guardian ad litem of her children Howard, Roberta and Ethel, for their personal *544 injuries. In a separate suit she sued as administratrix ad prosequendum of the estates of her children, Loretta, Patricia Ann and Delphine.
All five actions were consolidated and a trial limited to the issue of liability was ordered. R.R. 4:43-2(b). After a two-week trial the jury, by a vote of 10-2, returned a verdict in favor of defendants.
The structure in which the fire took place was a three-story tenement built in 1891. On each floor were four rooms, arranged in a row in "railroad" fashion. As viewed from the front of the building they were: living room, first bedroom, second bedroom and kitchen. Actually, the living room on the third floor was being used as a bedroom at the time of the fire. The living room, one bedroom and the kitchen each had doors opening into a common hallway in which the stairway giving access to the lower floors was located. The kitchen had an additional doorway leading to a rear stairway. Between the two bedrooms and protruding into them was an air shaft approximately three feet square, which passed through all three floors and was topped with a skylight. At each floor level the air shaft presented four double-hung windows. The only rooms having windows opening to the outside were the front (living) room and the kitchen.
On the morning of August 27, 1963 a fire started on the second floor. It was later determined that it resulted from the action of a six-year-old boy who, while playing with matches, had dropped a match into some clothing. Initial efforts to put out the fire were unsuccessful and it spread laterally to the second-floor front, to the rear stairs and into the hallway. The victims of the fire were Mrs. Friday, her six children, her mother Mrs. Ellis, her sister-in-law Pearl Ellis, and the latter's two children. When the fire was discovered they were in the front room of Mrs. Friday's apartment. There was testimony that some window panes in the shaft were broken or missing and that the fire moved up the air shaft, creating a "curtain of fire" which cut off *545 egress, either through the bedrooms or the hallway, to the rear stairs. The hallway on the second floor also became engulfed in flames, thereby cutting off exit by the main stairs. Mrs. Friday and her mother then attempted to escape by going up another stairway and trying to open the "scuttle" leading to the roof. Mrs. Friday testified that they were unable to lift it. They then returned to the children, who were trapped in the front room. As the fire came nearer some jumped to the pavement and suffered injuries for which they sued. The remainder perished where they stood.
The case was submitted to the jury on the theory of common law negligence. Plaintiffs produced two expert witnesses who testified, in substance, that the location and manner of construction of the shaft rendered it a fire hazard, that it was built of combustible materials and that the windows which opened into the apartment and the hallway were not fire resistant. Because flames from the shaft window which opened onto the hallway would interfere with the escape of persons from the front area of the apartment in case of fire in the shaft, they testified that there should have been a fire escape at the front of the apartment. As noted, there was also proof that the scuttle to the roof could not be opened.
Defendants denied negligence and proximate causation. Specifically, they produced testimony to the effect that the scuttle had not been fastened down but could readily have been raised. There was proof that the tenement had been inspected by inspectors from the Tenement House Bureau and had passed inspection. More specifically, defendants contended that the shaft was of fireproof construction, and that no front fire escape was necessary because of a provision in the statute which did away with its necessity where there were two independent stairways not adjacent to one another. N.J.S.A. 55:3-4. Defendants also contended that their negligence, if any, was not a proximate cause of the injury or damage claimed, but *546 that the starting of the fire in the apartment below and the alleged failure to summon the fire department promptly were independent intervening causes which destroyed the chain of causation and compelled a finding in their favor.
Plaintiffs' motion for a new trial was denied and the present appeals followed.
Plaintiffs first contend that the trial judge erred when he charged the jury on the issue of intervening cause, and compounded the error by stating that it was not foreseeable that a small boy would start a fire on the second floor.
We recognize the well settled rule that as long as the law is stated correctly and intelligently, the ultimate test of the soundness of instructions to the jury is not what the ingenuity of counsel can, at leisure, work out the instructions to mean, but how and in what sense, under the evidence and the circumstances of the trial, ordinary jurors would understand the instructions as a whole. Kargman v. Carlo, 85 N.J.L. 632, 638 (E. & A. 1914). If, viewed as a whole, the charge presents the law fairly and clearly, the fact that some expressions, standing alone, may be said to be erroneous affords no ground for reversal. Vadurro v. Yellow Cab Co. of Camden, 6 N.J. 102, 107 (1950). "The acid test is, would the jury be misled?" Middleton v. Public Service Co-Ordinated Transport, 131 N.J.L. 322, 323 (E. & A. 1944). Here our consideration of the charge in its entirety compels the conclusion that, in addition to being focused upon the initial cause of the fire rather than the issue which the jury was to be called upon to determine, it involved substantial errors in a number of respects which call for reversal.
In the heart of the challenged portion of the charge the jury was instructed:
"The term proximate means that there must be no other culpable or other agency intervening between the defendant's negligence and dereliction and the injury and damage.
An intervening cause in the act of an independent agency which destroys the causal connection between the negligent act of the defendant *547 and the wrongful injury, the independent act being the immediate cause in which case damages are not recoverable from the particular defendant because the original wrongful act is not the proximate cause of the injury. However, a defendant is not relieved from liability for his negligence by the intervening acts of third persons, if those acts were reasonably foreseeable, but I would say that this would have no application in the instant case because no one could reasonably foresee that the boys were going to light fires in apartments." (Emphasis added)
This portion of the charge was duly objected to. The trial judge was apparently under the impression that he had not said what the record now reveals. He declined to charge one of plaintiffs' requests which allegedly set forth the correct rule applicable.
The gravamen of plaintiffs' complaint was negligence. The charge was failure to exercise reasonable care to guard against the hazards of fire in connection with certain areas of the premises over which the landlords retained control, i.e., (1) the means of access to the roof (scuttle), (2) the air shaft, and (3) the means of exit. As landlords, defendants owed to plaintiffs a common law duty of exercising reasonable care to guard against foreseeable dangers arising from the use of the premises in connection with such portions thereof as remained within their control. Restatement, Torts 2d, §§ 360-361 (1965); Kuzmiak v. Brookchester, Inc., 33 N.J. Super. 575, 581 (App. Div. 1955); Rizzi v. Ross, 117 N.J.L. 362, 365-366 (E. & A. 1937); Barthelmess v. Bergamo, 103 N.J.L. 397, 398 (E. & A. 1927). The testimony of plaintiffs' experts, if credited by the jury, would support the conclusion that this duty had been breached in a number of respects, resulting in the injuries and deaths involved. Further, the alleged violation of N.J.S.A. 55:3-18, 19 (requiring that the scuttle be so constructed and maintained as to be easily opened) could also have been considered by the jury on the issue of defendants' negligence. Evers v. Davis, 86 N.J.L. 196, 204-205 (E. & A. 1914).
*548 The hazards of fire are a matter of common knowledge. Avedisian v. Admiral Realty Corp., 63 N.J. Super. 129, 132-133 (App. Div. 1960); Buckingham v. Donarry Realty Corp., 25 A.D.2d 722, 268 N.Y.S.2d 775 (App. Div. 1966); Restatement, Torts 2d, § 90 and comments (i)-(k), § 302 and comment (j), §§ 360-361, § 302A, comment (c) (1965). Here any award of relief to plaintiffs depended, not upon defendants' breach of any duty to prevent fires from being started by small boys playing with matches, but upon the breach of their duty to protect against the reasonably foreseeable risks of fire from any source. The charge permitted, if not compelled, a finding that the starting of the fire by the boy constituted an independent intervening cause which absolved defendants, even if negligent, from responsibility for the effects of the fire. At the very least, its tendency was to create a false issue and thus divert the minds of the jury from the real issue involved. There was no reference in the charge to any other possible intervening cause.
The misleading effect of the challenged portion of the charge was heightened by the court's instruction that the rule making the defendants responsible for injuries resulting from the reasonably foreseeable acts of third parties, Menth v. Breeze Corp., 4 N.J. 428 (1950), would not be applicable since "no one could reasonably foresee that the boys were going to light fires in apartments." The necessary corollary of this statement was that since the action of the boy was not foreseeable there was no duty on the part of defendants to guard against the hazards posed by the resultant fire.
It is urged that the charge as given, even if improper, was harmless because the jury was later instructed that defendants were not to be relieved from liability by the intervening acts of third persons where their own prior negligence was the efficient cause of the injury and damages. We disagree. In other portions of the charge "the efficient cause" was equated with "the proximate cause." Our conclusions regarding the propriety of use of the latter phrase, which *549 follow below, would be equally applicable to use of the former. Aside from this, the jury was instructed, in effect, that the proximate cause was the efficient cause, the one which "necessarily sets the other causes in operation," i.e., which led to the starting of the fire.
Plaintiffs also challenge the instruction, repeated several times during the charge, that plaintiffs were required to establish that defendants' negligence was the proximate cause of the injuries suffered. We hold that this placed an undue burden upon plaintiffs. Their obligation on the issue of proximate cause would have been satisfied had they established either that defendants' negligence was a proximate cause which concurred with the negligence of others to bring about the injuries sued for, Ristan v. Frantzen, 14 N.J. 455, 460 (1954), or that it was a substantial factor in bringing them about. Melone v. Jersey Central Power & Light Co., 30 N.J. Super. 95, 105 (App. Div. 1954), affirmed 18 N.J. 163 (1955); Cahill v. Mundet Cork Corp., 70 N.J. Super. 410, 419-420 (App. Div. 1961), certification denied 36 N.J. 302 (1962); Rappaport v. Nichols, 31 N.J. 188, 203 (1959).
Defendants urge that any possible error inherent in this portion of the charge was rendered harmless by the fact that in other portions the jury was instructed that it was not necessary that defendants' negligence be found to be the sole cause of the injuries, if it concurred with other efficient causes to bring them about. Not so. The challenged instruction bore upon a sensitive and decisive issue in the case. Regardless of how well intentioned the jury may have been, it had no way of knowing which of the two versions represented the correct rule. Girardin v. New York & L.B.R.R. Co., 135 N.J.L. 135, 138 (E. & A. 1947); Trecartin v. Mahony-Troast Construction Co., 18 N.J. Super. 380, 390 (App. Div. 1952).
In charging the correct rule the trial judge neither withdrew those portions of the charge which required plaintiffs to establish that defendants' negligence was the proximate *550 cause of their injuries nor stated the correct rule with such completeness as to counteract the erroneous one. Phillips v. Scrimente, 66 N.J. Super. 157, 163 (App. Div. 1961). On the contrary, he confirmed the latter by charging three of defendants' requests as follows:
"Of course, before you can find liability, you must determine whose negligence was the proximate cause of the plaintiffs' injuries and their present condition. Proximate cause is that which proximately and naturally leads to and which might have been expected to produce the end result; it is the efficient cause and the one necessary element which sets the other causes in motion, the one without which the observed effect could not have been followed. This necessary element, as each of the foregoing, must be proved as part of the burden imposed by law upon the plaintiffs, and this legal burden of proof requires that the plaintiffs establish the allegations of their complaint by the greater weight of the believable testimony. Failure of the plaintiffs to do so bars their right to recover; and I so charge you.
Proximate cause has been defined as the efficient cause; the one that necessarily sets the other causes in operation. It is the act or omission which directly brings about the happening complained of and in the absence of which the happening complained of would not have occurred; and I so charge you.
Another way of defining proximate cause is that it is the efficient cause, the one that necessarily sets the other causes in operation. It is that cause which naturally and probably led to and which might have been expected to produce the result; and I so charge you." (Emphasis added.)
We are satisfied that the challenged instruction, considered in connection with the other parts of the charge to which reference has been made above, requires reversal of the judgment. Cf. Wimberly v. City of Paterson, 75 N.J. Super. 584, 612 (App. Div. 1962), certification denied 38 N.J. 340 (1962).
Ordinarily, the foregoing disposition would make unnecessary any review of the remaining grounds urged for reversal. However, since some of them will likely be involved in the retrial, we proceed to their consideration.
Plaintiffs urge that the trial judge was in error in excluding from the jury's consideration defendants' asserted violation of the provisions of the New Jersey Tenement *551 House Law relating to shafts. The statute in question, N.J.S.A. 55:3-46, provided that:
"All shafts and vent flues constructed in tenement houses shall be constructed fireproof throughout, with fireproof self-closing doors at all openings at each story, except window openings in vent shafts which shall be closed with wire glass windows in metal frames; and if they extend to the cellar shall also be inclosed in the cellar with fireproof walls and fireproof self-closing doors at all openings. In no case shall any shaft be constructed of materials in which any inflammable material or substance enters into any of the component parts.
All shafts constructed in existing tenement houses and in buildings converted into tenement houses shall be inclosed in the cellar with fireproof walls with a self-closing fireproof cleanout door at the bottom and such shafts may be constructed of two-inch by four inch studs on the upper floors. The space between the studs shall be filled in solidly with fireproof material and the outside face of such shaft shall be covered with fireproof weather resisting material. The inside face of the shaft shall be plastered with two coats of plaster over metal lath or approved plaster board. Window openings shall be closed with wire glass windows set in a metal frame or a wood frame covered with metal."
It was originally enacted in 1904 and made to apply to all shafts "hereafter constructed in tenement-houses." L. 1904, c. 61, § 73. In 1925, when it was amended to add what is substantially the present second paragraph, the latter was made applicable to all shafts and all vent shafts "hereafter constructed." L. 1925, c. 215, § 73. By an amendment enacted in 1942 the word "hereafter" preceding the word "constructed" was eliminated from each paragraph. L. 1942, c. 228, § 12. In 1947 the present wording was adopted.
As noted, plaintiffs' expert witnesses testified that the vent shaft was of substandard construction and violated safe engineering practice. Specifically, they were of the opinion that it should have been constructed of fireproof material and extended all the way to the skylight. They also testified that the window frames opening onto each floor should have been covered with metal and the window panes should have been equipped with wire glass. In their opinion these omissions created a fire hazard. They further testified that *552 the location of the shaft posed a hazard to persons in the front of the apartment in the event that fire coming up the shaft erupted into the hallway cutting off access to the front stairs and to the kitchen from which the rear stairs led. Based upon such testimony the trial judge submitted to the jury the issue of whether defendants had exercised reasonable care, even though the shaft as constructed was not in violation of any applicable standard set forth in the Tenement House Act. Cf. McComish v. DeSoi, 42 N.J. 274, 282-283 (1964); Buccafusco v. Public Service Elec. & Gas Co., 49 N.J. Super. 385, 394-395 (App. Div. 1958), certification denied 27 N.J. 74 (1958); Adams v. Atlantic City Elec. Co., 120 N.J.L. 357, 364 (E. & A. 1938).
At the trial plaintiffs urged that the cited statute was applicable and, since it was not disputed that the window openings did not have wire glass or metal frames, the shaft was not constructed of 2" x 4" studs on the upper floor, the space between the studs was not filled in solidly with fireproof material, and the face of the shaft did not have fireproof material, all as required by the statute, the jury should have been permitted to consider these violations as additional evidence in arriving at its determination of whether defendants had been negligent. See Evers v. Davis, supra, 86 N.J.L., at p. 204. The trial judge ruled that the statute was prospective in operation and hence not applicable.
Plaintiffs urge that by omission of the word "hereafter" in 1942 the Legislature evidenced its intention that the statute was to be applied retrospectively thereafter. Statutes ordinarily apply prospectively. Nickel v. Gall, 49 N.J. 186, 189 (1967). Absent a clear intention to apply this statute retrospectively to a building built in 1891, we are not disposed to do so. In re Borough of Glen Rock, 25 N.J. 241, 249 (1957). We find no such intention here. The word "hereafter" was deleted from the first paragraph which plainly refers to a new construction which would necessarily be prospective, as well as the second paragraph. From the time of the original enactment of the Tenement House Act *553 until the present, the section here involved has made reference to all shafts "constructed." Plaintiffs urge that the use of the word "constructed" has reference to the condition achieved after construction is completed rather than to the act of construction. We incline to the view that it refers to the latter and is to be applied prospectively only. The phrases "shall be constructed" in the first paragraph and "shall be inclosed" in the second paragraph lend some support to this construction. The reference to fireproof and inflammable components indicates an intention to regulate the actual construction of shafts rather than to require reconstruction of those already built. This interpretation is supported by the practice and usage of the Board of Tenement House Supervision, the agency charged with administration of the Tenement House Act. Cf. Pringle v. N.J. Dept. of Civil Service, 45 N.J. 329, 332-333 (1965); Mastrobattista v. Essex County Park Commission, 46 N.J. 138, 146 (1965); Presbyterian Church of Livingston v. Division of Alcoholic Beverage Control, 53 N.J. Super. 271, 276 (App. Div. 1958), certification denied 29 N.J. 137 (1959).
Plaintiffs urge that even if this section of the statute was inapplicable, it was nevertheless admissible to show recognized standards of construction. We disagree. A statute which establishes a standard of conduct may be considered as evidence of negligence on behalf of one for whose benefit it was enacted if its breach was the efficient cause of the injury of which he complains. Lambe v. Reardon, 69 N.J. Super. 57, 68 (App. Div. 1961), certification denied 36 N.J. 138 (1961); cf. Moich v. Passaic Terminal & Transportation Co., Inc., 82 N.J. Super. 353, 369 (App. Div. 1964). Since the statute was inapplicable to defendants' building, it was not admissible for this purpose. Further, in the circumstances of the case, any probative value it possessed would have been more than offset by the possibility of prejudice arising from its submission to the jury. Stoelting v. Hauck, 32 N.J. 87, 103 (1960). Its exclusion *554 did not preclude consideration by the jury of the opinion testimony of plaintiffs' experts that the construction of the shaft was substandard and hazardous from the standpoint of fire by reason of the omission to follow standards which coincided, in great part, with those set forth in the statute.
Plaintiffs next urge that it was error for the trial judge to exclude from the jury's consideration defendants' alleged violation of N.J.S.A. 55:3-4, which requires fire escapes in certain tenement buildings. The statute in question provides, in part:
"Every nonfireproof tenement house erected prior to * * * [March 25, 1904], which is three stories or more in height shall * * * have a fire escape directly accessible to each apartment. * * * [This requirement] shall not apply to any house not more than three stories in height, which shall be provided with two independent stairways not adjacent to each other, leading from the top floor of said house to the first floor thereof * * *." (Emphasis added)
As noted, there was testimony from plaintiffs' experts that the presence of the shaft with a window opening onto the main hallway posed a hazard to persons in the front portion of the apartment in the event fire broke out and erupted through the shaft into the hallway, and that this condition required that there be a fire escape at the front of the building. Plaintiffs also sought to have submitted to the jury the question of whether the stairways leading from the apartment were such a compliance with the statute as to do away with the requirement that a fire escape be provided. The trial judge interpreted the statute to require only that there be two independent stairways not adjacent to each other and, based upon the undisputed proofs, withdrew the matter from the jury's consideration. We perceive no error in this ruling.
The interpretation of the statute was for the court. Its meaning was clear. The act made separate provisions applicable to nonfireproof tenements erected before and those erected after March 25, 1904. In the latter case *555 it exempted from the requirement that fire escapes be furnished tenement houses not more than three stories in height which were provided with two independent stairways as remote from each other as possible. N.J.S.A. 55:3-2. Nonfireproof tenements in existence on March 25, 1904 (as was the one here) were exempted from the requirement if provided with two independent stairways not adjacent to each other. N.J.S.A. 55:3-4. Plaintiffs urge that, even so, in order to qualify as "independent" within the meaning of the statute, the stairways were required to be "so disposed with relation to the apartment as to afford the occupants alternate means of escape in the event of fire," citing Soles v. Franzblau, 352 F.2d 47, 49-50 (3 Cir. 1965), certiorari denied 383 U.S. 911, 86 S.Ct. 897, 15 L.Ed.2d 666 (1966), and that whether they were so disposed was a fact question. While we are in accord with the interpretation of the statute set forth in Soles, we find its facts to be distinguishable from those in this case in that there the only means of access to the two stairways was through a single hallway. Here it was undisputed that the rear stairway led directly from the kitchen. In the event that fire in the hallway prevented access to the kitchen, those in the front of the apartment had an alternative means of reaching it through the rear bedroom. The front stairway was accessible, through the hallway, from the living room and front bedroom without the necessity of passing through the kitchen or any other room. The trial judge therefore properly determined that the statute (as distinguished from defendants' duty to exercise reasonable care) had not been violated by the omission of a fire escape.
Plaintiffs next charge error in the refusal of the trial judge to admit into evidence a report of the Division of Inspections of the City of Newark. This report, dated January 20, 1964, was made by one of the city's inspectors and produced by its superintendent of buildings. The inspection had been made in connection with the rebuilding of the tenement following the fire, and the report made *556 reference to claimed violations of the plans. The trial judge held, and we agree, that it was excludable. Further, the possibility of prejudice arising from its introduction would have justified its rejection, notwithstanding any possible relevancy. Stoelting v. Hauck, supra, 32 N.J., at p. 103.
Plaintiffs finally complain of the court's refusal to submit the case to the jury on the additional theory of strict liability, citing Schipper v. Levitt & Sons, Inc., 44 N.J. 70 (1965), and Cintrone v. Hertz Truck Leasing & Rental Service, 45 N.J. 434 (1965). Since strict liability was not pleaded in the complaint or set up as an issue in the pretrial order, the trial judge properly declined to do so. R.R. 4:29-1(b); Lertch v. McLean, 18 N.J. 68, 73 (1955). Aside from this, we are not persuaded that the facts of this case bring it within the ambit of the Cintrone-Schipper rationale.
Reversed and remanded for a new trial.