**Mahmoud HASSAN, Administrator of the Estate of Yameen Hassan, Deceased, Appellant,**

v.

**Clayton A. STAFFORD and Blanche Stafford, Trading as Delmar Motel.**

**No. 71–1849.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Sept. 26, 1972.

Decided Jan. 3, 1973.

C. Waggaman Berl, Jr., Booker, Leshem, Green, Shaffer & Berl, Wilmington, Del., for appellant.

Robert G. Carey, Prickett, Ward, Burt & Sanders, Wilmington, Del., for appellees.

Before STALEY, VAN DUSEN and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

MAX ROSENN, Circuit Judge.

This appeal is from a judgment entered on a jury verdict for the defendants, Clayton A. Stafford and Blanche Stafford, appellees in this court, in a diversity action brought in the district of Delaware. Appellant, plaintiff in the district court, sued for damages as a result of the tragic death of Yameen Hassan on April 23, 1969, while he was a paying guest in a commercial motel operated by appellees in New Castle County, Delaware.

A cigarette dropped in a first floor room at appellees' motel caused a fire in the morning hours of April 23, 1969, between 1:45 A.M. and 2:00 A.M. The guest who started the fire escaped from his room, but fell on the ground outside the building and gave no alarm. Clayton Stafford, notified of the fire about 2:00 A.M., immediately called the fire company and, with others, attempted to evacuate the guests from the motel. All the motel guests except the decedent had already been evacuated when the fire company arrived at approximately 2:10

A.M. The firemen mounted a ladder and after considerable difficulty removed decedent from his second floor room. By about 2:15 A.M. decedent was on his way to a hospital where he was admitted at 2:30 A.M. He subsequently died on April 29, 1969, from second and third degree burns sustained in the fire.

At the pretrial conference, appellant alleged that appellees were negligent in failing to provide fire doors, fire extinguishers, an internal warning system and in failing to notify decedent in time to permit him to vacate the premises. The allegation as to the fire extinguishers was withdrawn during the trial. Following a two-day trial to a jury, a verdict was returned specifically finding the defendants were "not negligent."

Appellant has appealed to this court from an order denying motions for new trial and for judgment notwithstanding the verdict. He alleges error also in certain rulings of the trial judge: (1) excluding from the jury evidence of safety regulations adopted by the Fire Protection Commission of Delaware; (2) permitting cross-examination of Deputy Fire Marshal Lynch, appellant's witness, as to the foregoing safety regulations, after barring them from evidence; (3) denying plaintiff the opportunity to examine the Deputy Fire Marshal as to building inspection procedures of his office; and (4) instructing the jury not to consider the arguments of plaintiff's counsel concerning the absence of a night attendant and ladders at the motel at the time of the fire. We find no error in the rulings of the trial judge and therefore affirm.

Delaware has enacted a fire prevention and safety code, 16 Del.Code § 6603, that provides for the creation of a Fire Prevention Commission with authority to promulgate safety regulations applicable to new installations or to existing installations if the Commission finds that they constitute a hazard.[1] The

---

1. 16 Del.Code § 6603 provides in part:
   The State Fire Prevention Commission shall have the power to promulgate, amend and repeal regulations for the safeguarding of life and property from the hazards of fire and explo-

Commission adopted the National Fire Protection Association 101 Life Safety Code as its regulations in 1965. The regulations as applied to motels required that: (1) an alarm system constructed in accordance with other provisions of the regulations "shall be provided for any hotel [not over three stories in height] having accommodations for 15 or more guests except where each guest room has direct exit to the outside of the building;" and (2) every stairway, elevator shaft, and other vertical opening shall be enclosed or protected by fireproof doors constructed in accordance with other provisions of the regulations. Appellees' motel, however, had been constructed about thirty years before the promulgation of the regulations, and the State Fire Commission had never inspected it nor found that its continuation in its existing condition constituted "a hazard so inimicable to the public welfare and safety as to require correction." Therefore, the regulations did not apply to appellees' motel at the time of the fire. At trial, plaintiff's counsel offered to introduce the regulations as evidence of the proper standard of care to be observed by appellees. The district court ruled they were inadmissible.

We find no reversible error in this ruling for three reasons: (1) appellant's trial counsel acquiesced in the ruling; (2) appellant was not prejudiced by the ruling; and (3) no preexisting Third Circuit rule renders such regulations admissible.

■ Very early in the direct examination of Lynch, plaintiff's counsel attempted to have him testify as to the contents of the regulations. At that point, defendant's counsel objected, and a lengthy discussion of the applicable law was held out of the hearing of the jury. During that discussion plaintiff's counsel initially indicated that he desired to introduce the regulations as a legal standard, the violation of which would be negligence per se. After the court ruled against him, plaintiff's counsel then requested that the regulations be admitted merely as evidence of negligence. Upon continuation of this discussion the next day, plaintiff's counsel acquiesced in the trial court ruling that the Safety Code could not be introduced as independent evidence but that plaintiff's expert would be permitted to testify that his opinion was based on the Safety Code.[2] Not having objected to that ruling, plaintiff is not permitted to raise this issue on appeal. *See Kuzma*

---

sion. Such regulations, amendments, or repealers shall be in accordance with standard safe practice as embodied in widely recognized standards of good practice ` for fire prevention and fire protection and shall have the force and effect of law in the several counties, cities and political subdivisions of the State. . . . Such regulations and amendments shall not apply to existing installations, plants, or equipment unless the State Fire Prevention Commission has duly found that the continuation thereof constitutes a hazard so inimicable to the public welfare and safety as to require correction. . . .

2. The record shows the following colloquy:

THE COURT: Now, the law as I find it in Delaware is stated in Hercules Powder Company v. DiSabatino, . . . . [T]his is what the Court said:

'We have no doubt but that safety codes prepared and issued by government agencies are not admissible as independent evidence to prove the truth of the statements or standards contained in them.'

Then there is a citation.

'But it has long been permissible to ask on direct as well as on cross-examination an expert witness to state the grounds of his opinions and to detail the general data which forms the basis of his opinion. . .'

. . . . .

Now, this gives an opportunity for your adversary to cross-examine on the basis of the Code if you go into it. But I think that is as far as the law permits you to go in using the Code.

MR. BERL: *Your Honor, I agree. I read last night the same case your Honor cited.*

(Emphasis added.)

v. United States Rubber Co., 323 F.2d 657, 658 (3rd Cir. 1963); Curko v. William Spencer & Son, Corp., 294 F.2d 410, 413–414 (2d Cir. 1961).

■ If appellant had properly objected to the court's ruling, we would nevertheless find that he was not harmed by the exclusion. Lynch, after being properly qualified by the appellant, expressed an opinion on direct examination as to the insufficiency of the fire devices in the motel. He stated unequivocally:

It would be my opinion that the building did not comply with current standards of recognized fire protection features for an occupancy of that type.

He explained that the stairwells were not enclosed and that "they should have fire doors at the top and the bottom to prevent the vertical spread of any fire, smoke or heat or gases from one floor to another. . . ." Another specific inadequacy, in his view, was the lack of an internal alarm system. On cross-examination, he stated that he based his opinion as to current standards on his own personal experience and training, and on national standards, including the National Fire Protection Association Life Safety Code. He also testified that Delaware law, embodied in regulations of his office and of the Building Inspector's office, requires that fire doors and an internal warning system be installed in motel structures built today.[3] The jury did hear the substance of the regulations, and in our view the testimony actually adduced was as effective, or possibly more effective, than merely reading the cold regulations.

■ Finally, in ascertaining whether the trial court erred in his ruling, our first inquiry must be what evidentiary law should have been applied. F.R.Civ. P. 43 provides, in pertinent part:

All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the

---

3. Illustrative excerpts of that testimony are as follows: On direct examination, the following:

[BY MR. BERL (Plaintiff's Counsel):]
Q. In view of your investigation of the fire, do you have an opinion with respect to what would have been the practical value of having fire doors in the building at the time of the fire?
A. Well, of course, fire doors at the top and bottom of this stair well in this fire would have certainly retarded the spread of the fire and changed probably the course of the fire, would have led to contain the fire for a longer period of time on the first floor.
. . . .
Q. . . . Were there any other areas of deficiency that you found at the scene of the fire?
. . . .
A. Well, of course one of the obvious things, there was no internal fire alarm system—
THE COURT: The customary standards do demand that?
THE WITNESS: The customary standards, yes.
Cross-examination:
BY MR. CAREY [appellees' counsel]:

Q. Would you tell me again what the basis is of your opinion that this kind of a structure should have had fire doors and an internal warning system?
A. The basis of that opinion is, first, certainly, my own personal experience at many fires and as a result of investigating the spread of fire and the circumstances of what happens in places of public accommodation. In addition to that, through my own formal training that I have received at various schools, and through my knowledge of nationally recognized practices.
Q. Well, isn't it correct that any structure built today similar to that would have to have the items which you mentioned?
A. Yes, sir.
Q. By Delaware law, isn't that right?
A. By regulations of our office and the Building Inspector's office.
Q. Which have the force of law?
A. Yes, sir.
Q. And that law sets out that fire doors are necessary in this kind of a structure which would be built today, internal alarm systems perhaps, a sprinkler system perhaps; isn't that correct?
A. With the exception of the sprinkler system, yes, sir.

courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made.

It is therefore necessary to determine whether such regulations would be admissible under any one of the three categories. Since this case was heard by a district court sitting in Delaware, we first consider whether Delaware courts would admit them. The district court in this case concluded that Delaware law, as enunciated in Hercules Powder Co. v. DiSabatino, 5 Storey 516, 188 A.2d 529 (1963), was dispositive. In that case, involving the death of an employee of DiSabatino Brothers, Inc., by electrocution when he grasped a guy wire, expert witnesses were called by both sides to testify as to the proper standards of installation to be followed in the construction of electric power lines. Hercules' engineer who designed and approved the construction of the line testified that the line as constructed complied with the National Electrical Safety Code with respect to the insulation of guy wires. The plaintiffs argued that the trial judge committed error in permitting Hercules to examine the expert witnesses on the basis of the National Electrical Safety Code since that code was inadmissible in evidence as proof of the standard of installation to be followed.

In rejecting the contention of the plaintiffs in *Hercules*, the Supreme Court of Delaware held:

We have no doubt but that safety codes prepared and issued by government agencies are not admissible as independent evidence to prove the truth of the statements or standards, contained in them. [citation omitted]

But it has long been permissible to ask on direct as well as on cross-examination an expert witness to state the grounds of his opinions and to detail the general data which forms the basis of his opinion. . . . The Code, itself, was not offered in evidence. We see nothing improper in basing the examination of an expert witness on such a recognized safety code.

*Id.* at 533.

The other important case explaining Delaware law is Sammons v. Ridgeway, 293 A.2d 547 (Del.1972), which plaintiff called to the court's attention after the briefs were submitted. That case involved a suit by a school student against a school bus owner and operator to recover damages sustained when an auto struck her after alighting from the bus. The driver violated regulations enacted pursuant to a Delaware statute requiring the Board of Education to adopt and enforce regulations for the operation of school buses. The trial court charged the jury that violation of those regulations would constitute negligence per se. The Supreme Court of Delaware affirmed, reasoning that the regulations had the force of law and there was no basis for distinguishing rules established by statute from those established by an agency regulation authorized by statute. The court rejected the argument that the regulations were improper standards because they did not impose any sanctions. It also noted that it did not intend to extend the negligence per se doctrine to all regulations of administrative agencies.

Under these two cases, it would appear that the regulations at issue in the *Hassan* case would be inadmissible under Delaware law. In this case, appellees' motel was an existing installation, and there had been no finding that it was a hazard. Under *Hercules* and the cases it relied upon, it would appear that the regulations of the Commission would be inadmissible because they did not ap-

ply to the motel with the force of law.[4] The inapplicability of the regulations distinguishes this case from the *Sammons* case. Although the *Sammons* case may indicate a new trend toward admissibility, its holding was narrowly limited to its facts.

■ There is no United States statute on this question, and there apparently was no applicable rule of evidence uniformly applied in United States courts prior to the adoption of the federal rules. Nevertheless, it is established that federal courts have the power to create new precedents under Rule 43 in order to permit the judicial development of a progressive federal law of evidence. *See, e. g.,* United States v. 60.14 Acres of Land, 362 F.2d 660, 666 (3d Cir. 1966); Treharne v. Callahan, 426 F.2d 58 (3d Cir. 1970). The question is whether this is an appropriate case for creating a new rule.

■ The modern trend in federal and state courts appears to favor the admission of regulations as evidence of a standard of care, even where the regulations do not apply with the force of law to the individual defendant. In Curtis v. District of Columbia, 363 F.2d 973 (D.C.Cir.1966), the court held that it was error for the trial judge to have precluded the admission of the District of Columbia building code in a suit for in-

juries resulting from the projection above the level of the sidewalk of a hinge of a vault covering. The vault had been constructed prior to the adoption of the building code which required paving above vaults to be flush with the pavement. The trial judge excluded the building code since it was not retroactive in its application. The majority opinion held that the regulation should have been admissible, though not violated, as

> evidence of a standard which the jury could consider in determining whether the defendants had exercised due care according to their respective responsibilities. The regulation should have been admitted accompanied with an instruction, if requested, that it could be considered with other evidence but only for the limited purpose we indicate. Experience and expertise had combined to lead the Commissioners to decide in formulating the 1951 Building Code that safety would be served by requiring vault coverings in sidewalks to be flush with the sidewalk paving.

*Id.* at 975. While *Curtis* reflects the modern trend,[5] we need not decide whether we should adopt the *Curtis* rule since appellant acquiesced in the application of Delaware law and he was not harmed by the exclusion of the regulations.

---

4. *See* note 1 *supra.*

5. Other cases reflecting this trend are: Boston & Maine Rr. v. Talbert, 360 F.2d 286 (1st Cir. 1966); Dorsey v. Yoder Co., 331 F.Supp. 753 (E.D.Pa.1971); Quinn v. United States, 312 F.Supp. 999 (E.D.Ark.1970); Greene v. Sanitary Scale Co., 296 F.Supp. 625 (E.D.Pa. 1969), rev'd on other grounds, 431 F.2d 371 (3d Cir. 1970).

Some authorities, however, have taken a firm stand against the admission of such regulations. *See, e. g.,* Mississippi Power & Light Co. v. Whitescarver, 68 F.2d 928 (5th Cir. 1934); II J. Wigmore, Evidence § 461, at 500–01 (3d ed. 1940); *cf.* McDonald v. United States, 284 F.Supp. 978, 983 (N.D.Tex.1968). The cases opposed to the admission of the regulations do so generally on the theory that the regulations are basically hearsay expressions of opinions of experts that should not be received without an opportunity for their cross-examination. Annot., 75 A.L.R.2d 778.

Another objection, however, has been expressed in Ellis v. Caprice, 96 N.J. Super. 539, 233 A.2d 654, 662 (1967), and by Judge Prettyman dissenting in Curtis v. District of Columbia, 363 F.2d at 977. Judge Prettyman was fearful that the jury would be confounded with the distinction between admitting the regulations as evidence of negligence but not as a negligence per se standard. Once the regulation was in evidence, he said, "a jury would almost inevitably give it effect. Indeed I am not quite sure myself what the line is between giving effect to the regulation and considering it as evidence of negligence." *Id.* at 978.

■ Appellant also complains because defendants' counsel was permitted to make reference to the Safety Code in his cross-examination of plaintiff's expert. This contention deserves little comment. Lynch had testified on cross-examination that his opinion concerning the fire safety deficiencies in the motel was based in part on the National Fire Protection Life Safety Code promulgated by the Fire Protection Commission pursuant to 16 Del.Code § 6603. Permitting cross-examination of the expert as to the basis for his opinions followed the procedure approved in *Hercules* and assented to by plaintiff's counsel. Insofar as the expert's opinion was based on the Safety Code, the Code was a relevant aspect of the cross-examination. Moreover, we perceive no harm to the appellant by this examination. On the contrary, we believe that it was supportive of his claims of negligence.

■ We find no merit to appellant's claim that the trial judge committed prejudicial error because he denied an opportunity to examine the Deputy Fire Marshal as to building inspection procedures of his office. The latter acknowledged that his office had made no inspection of the motel and had not made any findings related to it as permitted by the Code. Further examining him as to the inspection procedures in his office was for the admitted purpose of inquiring what finding and recommendations his office would have made had they accomplished the inspection. A related purpose was to establish that the reason for the lack of inspection was that the Fire Marshal's office was undermanned. The purpose was conjectural and irrelevant since in fact there had been no inspection and finding.

■ Another issue raised by the appellant requires brief mention. Appellant contends that the court erred prejudicially in instructing the jury to ignore his counsel's argument pertaining to the absence of a night attendant on duty at the time of the fire and of sufficient ladders for rescue purposes. During the course of his testimony, Clayton Stafford testified that there was no night attendant on duty at the motel at the time of the fire. He also stated that there was only one ladder, which had to be moved from one second floor room to another to evacuate guests. Appellant's counsel argued to the jury that the decedent might have had earlier notice of the fire had there been an attendant on duty and had there been more than one ladder.

The pretrial order did not specifically include these matters as issues of negligence. This court has held that a pretrial order when entered "limits the issues for trial and in substance takes the place of pleadings covered by the pretrial order." Basista v. Weir, 340 F.2d 74, 85 (3d Cir. 1965). Raising these issues as another theory of negligence for the first time in summation to the jury after the evidence had been closed would have prejudiced appellees since there had been no notice to them and opportunity to defend on this ground. We do not believe that the trial judge abused his discretion in his application of the pretrial order.

■ Finally, appellant argues that it was error for the trial court to deny his motion for a directed verdict on the issue of liability. His motion was predicated upon the unrefuted testimony of his expert, Deputy Fire Marshal Lynch, that the motel did not conform to current standards for fire safety devices. It was based also upon the admission that no fire doors or internal warning system had been installed. In deciding this issue it is important to note that appellees were held to a standard of reasonable care for their guests' safety. The court instructed the jury:

> If you find from the evidence that the defendants did exercise reasonable care for the safety of their guests, consistent with the grade and quality of the accomodations offered, then the plaintiff cannot recover and your verdict must be for the defendants.

The court's instruction was correct and neither party has suggested that a different standard should have been applied. A verdict should be directed only when the "evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict." Woods v. National Life and Accident Insurance Co., 347 F.2d 761, 768 (3d Cir. 1965) (quoting Brady v. Southern Ry. Co., 320 U.S. 476, 479–480, 64 S.Ct. 232, 88 L.Ed. 239 (1943) ); *see* Boeing Co. v. Shipman, 411 F.2d 365, 373–375 (5th Cir. 1969). On this record, we cannot state absolutely that the question whether appellees had exercised reasonable care for the safety of their guests was in no way dependent upon weighing the credibility of the witnesses and that only one reasonable conclusion could have been reached by the jury in its verdict. Fire Marshal Lynch's testimony was only one piece of evidence as to what the duty of reasonable care entailed. Nor can we say that the issue of proximate cause was in no way dependent on credibility and that only one reasonable conclusion could be reached with regard to it. The jury was free to conclude that failure to conform to "current standards of recognized fire protection features" did not amount to failure to exercise reasonable care.

■ Lynch's credibility on the question of what constituted current standards was a matter for the jury to consider: a trier of fact is not bound to accept an expert's opinion merely because it is uncontradicted. Levinson's Estate v. Commissioner of Internal Revenue, 282 F.2d 581 (3d Cir. 1960); Griffin v. Missouri Pacific Ry. Co., 413 F.2d 9 (5th Cir. 1969); United States v. McNeil, 434 F.2d 502 (D.C.Cir.1970). There was also considerable evidence that appellees did exercise reasonable care for the safety of their guests. Clayton Stafford testified that fire extinguishers were located at the end of each hallway, and that he inspected the premises each evening before retiring. On the night in question he walked through the halls at approximately 1:00 A.M., and there was evidence that once the fire was discovered, he did everything in his power to evacuate the tenants.

We have examined appellant's remaining contentions and find them to be without merit.

The judgment of the district court will be affirmed.