Roscoe L. JONES et al., Appellants,

v.

DISTRICT OF COLUMBIA, a municipal corporation, Appellee.

The ELLEN REAL ESTATE CORPORA-
TION et al., Appellants,

v.

DISTRICT OF COLUMBIA, a municipal corporation, Appellee.

Nos. 17593, 17594.

United States Court of Appeals
District of Columbia Circuit.

Argued June 26, 1963.

Decided July 25, 1963.

Petition for Rehearing En Banc
Denied Sept. 17, 1963.

Petition for Rehearing by the Division
Denied Sept. 17, 1963.

Mr. Mark P. Friedlander, Washington, D. C., with whom Messrs. Mark P. Friedlander, Jr., and Blaine P. Friedlander, Washington, D. C., were on the brief, for appellants in No. 17,593.

Mr. Thomas S. Jackson, Washington, D. C., with whom Messrs. Robert M. Gray, John L. Laskey, Lewis H. Barnes and Austin P. Frum, Washington, D. C., were on the brief, for appellants in No. 17,594.

Messrs. Hubert B. Pair and Richard W. Barton, Asst. Corp. Counsel for District of Columbia, for appellee. Messrs. Chester H. Gray, Corp. Counsel, and Milton D. Korman, Principal Asst. Corp. Counsel, were also on the brief for the District of Columbia.

Before WILBUR K. MILLER, WASHINGTON and WRIGHT, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge.

In these consolidated cases appellants, rooming house and apartment operators, are seeking declaratory and injunctive relief from the District of Columbia's attempt to enforce the fire safety provisions of "The 1961 Building Code of the District of Columbia." Presuming to act in behalf of all owners and operators of such businesses, they challenge the constitutionality of the fire provisions of the Code as applied to them. The District Court found that the appellants'

opposition to the relevant provisions of the Code stemmed, not from concern for their constitutionality, but from "an absence of desire to conform, based on economic reasons." It dismissed their complaints, and we affirm.

The authority for the promulgation of the fire provisions in the 1961 Building Code is the Means of Egress Act, 5 D.C. Code §§ 317–323. That Act authorizes "[t]he Commissioners of the District of Columbia, for protection against fire, * * * after public hearing, to promulgate regulations to require the owner * * * of any building *now existing* or hereafter erected, other than a private dwelling, * * * over thirty feet in height," to equip such building with suitable means of egress, fire extinguishers, "and such other appliances as the Commissioners may deem necessary * *." 5 D.C.Code § 317. (Emphasis supplied.) The Act also provides that "[i]t shall be unlawful for any person to occupy any building thirty days after notice in writing" of non-compliance with the regulations promulgated by the Commissioners. 5 D.C.Code § 318.

Pursuant to the Act, public hearings were held after due notice by mail to approximately 300 interested organizations and notice to the public generally in three daily newspapers of general circulation in the District of Columbia. All interested parties were invited to appear and present their views and any recommendations they might have respecting the proposed regulations. All interested parties who did appear were fully heard. After the hearings, on September 29, 1960 the 1961 Building Code of the District of Columbia was promulgated, to become effective January 1, 1961.

Section 3–162 of the 1961 Building Code provides: "No person shall use any building * * * until the Director of the Department of Licenses and Inspections, upon written application, shall have issued a Certificate of Occupancy to such person for such use * * *." Appellants, along with all other operators of rooming houses, tenements, apartments and hotels, were sent notices that the

"present Certificate of Occupancy issued for [their] premises IS NO LONGER VALID, and that * * * it will be necessary for [them] to secure a NEW Certificate of Occupancy valid under the 1961 Building Code." Upon receipt of these notices, appellants named in Case No. 17,594 made application for a New Certificate of Occupancy. Appellants in Case No. 17,593 refused to make such an application. After inspection of the premises of appellants who applied for new Certificates of Occupancy, the Department of Licenses and Inspections issued to each an order listing deficiencies "which must be corrected before the NEW Certificate of Occupancy may be issued." Those appellants have noted appeals to the Board of Appeals and Review created by the Code for such purpose. The appeals before the Board are still pending awaiting the outcome of these proceedings.

## I.

Initially, appellants attack the constitutionality of the 1961 Code, alleging that it was issued "without a full quasi-judicial hearing," and without personal notice of such hearing to appellants. They further argue that the hearings as held failed to disclose facts warranting and supporting the regulations as promulgated.

■ In so arguing, appellants misconceive the purpose and kind of hearing required by the Act. In passing the Means of Egress Act, Congress intended to protect the public, particularly that portion of the public which lives in, or frequents, buildings covered by the Act. Congress wanted to protect against the danger to human life from fire. While the cost to the owners of making the necessary changes in buildings to provide these protections was a necessary concern, primarily the Congress was interested in protecting the public. Under the Act, the Commissioners of the District were authorized to hold public hear-

ings, to determine the public interest, and to provide against the danger.

■ In carrying out the mandate of the Congress, the Commissioners acted in a quasi-legislative capacity and the hearings which were conducted prior to the promulgation of the regulations were quasi-legislative, not quasi-judicial. At such hearings there is no requirement, under due process or otherwise, that personal notice be served on the members of the public who may be affected by the proposed regulations. The requisite notice was published in the three newspapers of general circulation in the District. In addition, notices were mailed to approximately 300 organizations which had requested that they be notified of public hearings. Consequently, appellants' contention that the regulations are void because they were not personally notified of the public hearing required by the statute is without merit.

■ So too is their contention that the hearings must develop facts which support the regulations, in the manner that findings are supported by the record in judicial proceedings. The notice, and the public hearing required by the statute, were, as indicated, for the purposes of advising the public, including appellants, of the proposed regulations and affording the members of the public opportunity to show by evidence, or otherwise, that the proposed regulations, or some of them, were not in the public interest. There is no requirement that the facts developed at these quasi-legislative hearings support each and every provision of the regulations which result therefrom.

Of course, labeling the hearings held here quasi-legislative, rather than quasi-judicial, does not advance this discussion unless the difference between the two is understood. See Jordan v. American Eagle Fire Ins. Co., 83 U.S.App.D.C. 192, 198, 169 F.2d 281, 287 (1948). A legislative hearing relates to "the making of a rule for the future."[1] As distin-

1. Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53

L.Ed. 150 (1908). In the Prentis case, Mr. Justice Holmes distinguished be-

guished from a judicial inquiry, it is a non-adversary proceeding which seeks to devise broad policy applicable to the public generally, or a substantial segment thereof, rather than to individual parties. In such hearings, "it is not necessary that the full panoply of judicial procedures be used." Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 1515, 4 L.Ed.2d 1307 (1960). While fact finding may to some extent be involved in the process, the due process requirements of confrontation and cross-examination, the hallmarks of the judicial inquiry, are not necessarily present. Rather the quasi-legislative inquiry tends to consult broad relevant data available from surveys, studies and published experience, free from the limitations of confrontation and cross-examination. Initially, the quasi-legislative inquiry depends on staff work. As here, the staff report often is presented to the interested public with the invitation to appear at a public hearing to oppose or praise. From a practical standpoint, with respect to some forms of quasi-legislative inquiries, such as one related to the proposed promulgation of a building code, this is the only feasible way to proceed.

Appellants argue, abstracting language from old opinions [2] of this court, that the District Commissioners have no legislative authority and, consequently, may not conduct quasi-legislative hearings. It is true, of course, that the Congress is the legislative body for the District of Columbia. But "[t]he District of Columbia is a municipality * * * and Congress from early times has repeatedly lodged subordinate legislative powers in the municipality." [3] "[M]any cases have arisen concerning regulations promulgated by the Commissioners pursuant to authorization from Congress, and this court has never questioned the validity of the type of delegation here complained of." [4] Specifically, as is relevant here, Congress has delegated the Commissioners to act for it with reference to fire protection in public buildings. 5 D.C.Code §§ 317–323. It has ordered the Commissioners to determine the public interest and, after public hearing, promulgate regulations to protect it. This the Commissioners have done in the only practical way such hearings for such purpose can be conducted. If compliance with these regulations results, as appellants here claim, in unlawful confiscation of their property, due process pursuant to a judicial proceeding may protect them. But, in this record, there is absolutely no evidence on which to predicate such a claim.

## II.

■ Appellants also contend that the regulations are unconstitutional by reason of vagueness. Pointing to the technical language of various portions of the

---

tween a judicial and a legislative inquiry, at p. 226 of 211 U.S., at p. 69 of 29 S.Ct., as follows:

"* * * A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power. * * *"

2. Newman v. Willard's Hotel Co., 47 App. D.C. 323 (1918); Coughlin v. District of Columbia, 25 App.D.C. 251 (1905). These cases, cited by appellants, are at pains to state that Congress is the legislature for the District of Columbia. No

one suggests otherwise. See Const., Art. 1, § 8, Cl. 17. The fact is, however, as shown in the District of Columbia Code, and as shown here, Congress has simply delegated to the District government the responsibility for promulgating regulations covering many areas of legislative interest. For example, instead of "passing laws" to promote safety from fire in District buildings, it authorizes the District to "promulgate regulations." The fact that the label is different works no change in the legislative result or the legal effect.

3. LaForest v. Board of Commissioners, 67 App.D.C. 396, 397, 92 F.2d 547, 548 (1937).

4. Id., 67 App.D.C. at 398, 92 F.2d at 549, and see cases cited therein.

Code, they assert that they, as well as their attorneys, are unable to understand them, unable to know what they must do to comply. They also allege that the notices of deficiencies compound the confusion in that they fail to "specify the character and number of means of egress or other appliances to be provided," as required by the Act. 5 D.C.Code § 319.

A modern building code is not intended to be read by the uninitiated. Plumbing, electrical and safety provisions in codes for modern public buildings are such that the laymen cannot be expected to understand all the provisions thereof. As the District Court stated, "Technical language being intrinsically necessary in the regulations in order to carry out the legislative purpose, it follows that the proper test of clarity must be whether the regulation can reasonably be understood by a person with knowledge in the field." In short, the technical knowledge of a qualified engineer, architect or artisan is required to read and understand modern building codes. The fact that laymen cannot read and understand the 1961 Building Code of the District of Columbia cannot relieve the appellants of their obligation to comply with its provisions. Moreover, the notices of deficiencies used in applying the Code, like the provisions of the Code itself, do not necessarily violate due process merely because they may be unintelligible to the untrained eye.

■ The provisions of the Building Code, like municipal ordinances passed for the protection and the safety of the public, are themselves protected by a strong presumption of constitutionality. They cannot be declared unconstitutional unless their provisions are clearly arbitrary and unreasonable and have no rational relationship to the purpose intended. Cf. 5 McQuillin, Municipal Corporations (3d Ed.) §§ 19.05–06. Measured by this test, the regulations under attack here are not only constitutional as promulgated, but also as applied.

■ Citing Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), appellants also allege unconstitutionality in that the regulations repose "unbridled" and "unlimited" discretion in administrative officials. A simple reading of the regulations refutes this extravagant charge. The regulations do allow the Director of Licenses and Inspections discretion to grant variances in certain limited cases. This flexibility is required because the regulations apply to existing as well as new construction. Appellants, as owners of existing buildings, instead of making a broadside attack on the regulations, might do well to apply to the Director for approval of variances in their buildings which do not jeopardize public safety. For, unless discrimination is shown, the vesting of a limited discretion in the administrative officials will not relieve the appellants from compliance or otherwise invalidate the regulations. See 37 Am.Jur. Municipal Corporations § 160, pp. 780–781 (1941), and cases there cited.

### III.

■ Appellants in No. 17,593 make an amorphous argument, not joined in by appellants in No. 17,594, to the effect that the *temporary* [5] Certificates of Occupancy previously issued them are somehow still valid, thus relieving them from obtaining new certificates under the 1961 Building Code. Without following the vagaries of appellants' argument on this issue, we simply cite Section 3–162 of the Code, which provides that no person shall use any building covered by the Code without a Certificate of Occupancy that such building "complies with all *applicable* provisions of this Code * * *." We hold that Chapter 6 of the 1961 Building Code of the District of Columbia contains requirements applicable to appellants' buildings and that such buildings may not legally be operated as rooming houses or apartments until there is issued a Certificate of Occupancy under the

5. These certificates stated on their face that they were temporary and would expire on repeal of the temporary war-time regulations under which they were issued.

1961 Code for such buildings. 5 D.C. Code § 318.

Affirmed.

WILBUR K. MILLER, Circuit Judge, concurs in the result.