**VIRGIN ISLANDS HOTEL ASSOCIATION, INC. (U.S.),**
a Corporation

v.

**VIRGIN ISLANDS WATER & POWER AUTHORITY**
**VIRGIN ISLANDS HOTEL ASSOCIATION (U.S.), Appellant**

No. 72-1996

United States Court of Appeals

Third Circuit

Argued January 19, 1973

Filed April 12, 1973

EVELYN N. COOPER, ESQ. (ISHERWOOD & COLIANNI), Christiansted, St. Croix, V.I., *for appellant*

RONALD H. TONKIN, ESQ., Attorney General, St. Thomas, V.I., *for appellee*

Before VAN DUSEN and ADAMS, *Circuit Judges*, and BARLOW, *District Judge*

## OPINION OF THE COURT

VAN DUSEN, *Circuit Judge*

This is the second time that these parties, the Virgin Islands Hotel Association (the Hotel Association) and the Virgin Islands Water and Power Authority (the Authority), are before this court. On the first occasion, in Virgin Islands Hotel Ass'n v. Virgin Islands Water & Power Authority, 465 F.2d 1272 (3d Cir. 1972), this court upheld with modification an injunction the district court had issued against the Authority. By order of October 3, 1972, the district court vacated that injunction, and the Hotel Association appeals. We affirm the October 1972 order of the district court.

## I. BACKGROUND

It is necessary only to summarize the facts stated in our earlier opinion and in the first opinion of the district court, reported at 54 F.R.D. 377 (D.V.I. 1972).

In the late fall of 1971, the Authority became worried that its revenues would soon fail to provide the coverage over interest required by its outstanding debt instruments, with devastating impact on its ability to procure additional needed financing. On November 10, 1971, it issued a press release indicating its intention to raise electric rates by from about 19% for residential users to about 25% for large power users. Public hearings were held one week

later, and on December 3 the Authority put the proposed increases into effect.

The Hotel Association was understandably upset, since its members are classified as "large power" users. It immediately sought an injunction against the rate increase. The district court ruled that the Authority had violated 30 V.I.C. § 105(a)(12) in two ways. First, because the Authority did not have at its disposal information on the cost of providing electricity to its various classes of customers, the Authority had failed "to determine . . . reasonable rates." Second, the public hearings held pursuant to this section 105(a)(12) were altogether inadequate. Among other defects, notice to the public was too short to allow adequate preparation time and the reports the Authority relied on were not made available publicly until the first public hearing. The district court, on February 4, 1972, ordered the Authority to rescind the increases, to have made an appropriate study of costs (called a "rate" study), and to hold proper public hearings on the proposed increases. However, to avoid possible disruption, the court stayed this injunction for ten months.

By decision of June 28, 1972, this court, although ruling that the Authority's determination of rates is not subject to judicial review, held that review is available when the Authority has "ignored a plain statutory duty, exceeded its jurisdiction, or committed constitutional error." 465 F.2d at 1275. "The rate fixing procedure created by 30 V.I.C. § 105(a)(12) contemplates a *meaningful* public hearing at which interested persons can present their views and present *evidence in support thereof.* Concomitant with such a hearing are the essential requirements of adequate notice, dissemination to the public of the facts and figures on which the Authority relies, and an opportunity afforded to those attending the hearings to rebut such facts and figures." Id. at 1276. This court agreed with the district court

that the Authority's hearings did not comply with these requirements. This court did not, however, agree that § 105 (a) (12) imposed any duty "to make rate studies as such," id. at 1276, and modified the district court injunction accordingly.

To comply with this court's mandate, the Authority commissioned new reports from R. W. Beck & Associates and from D. S. S. Engineering, Inc. (hereinafter D. S. S.); it also had Jackson & Moreland prepare an update of the report they had prepared earlier. On July 5, 1972, the Authority issued a press release stating, inter alia, that new hearings would be held and that the earlier Jackson & Moreland study was available to the public. Beginning on August 12, 1972, the Authority had published in the local newspapers notices that new public hearings would be held on September 11, 12 and 13. The Authority made the Beck and the Jackson & Moreland reports available to the public on August 8, the D. S. S. report on August 28.

The Authority held these hearings as scheduled. At each hearing various officials of the Authority commented on the proposed rate increases, and representatives from the three engineering firms summarized and discussed the contents of their reports. In accordance with the procedure announced at the beginning of each meeting, all persons could submit written questions, which would be answered by either an official of the Authority or a representative from one of the firms. In addition, all persons could submit written statements or, at the conclusion of the Authority's presentation, deliver oral statements. According to an affidavit of the Authority's Executive Director, "All questions which were asked were responded to. In addition, any person desiring to make a statement with regard to the proposed subject rate increases were [sic] permitted to do so."[1]

---

[1] This affidavit was submitted with the Authority's Motion to Vacate Injunction. The Hotel Association neither filed a counter-affidavit nor disputed these assertions at the September 1972 hearings held on the motion.

The Secretary of the Hotel Association's St. Thomas-St. John Chapter testified at the September 12 hearing held on St. Thomas.[2] In addition, counsel for the Hotel Association and an expert the Association had hired, Constance W. Bary, attended the September 13 hearing held at Christiansted on St. Croix. Counsel objected to the testimony not being sworn and not being subject to oral cross-examination.[3] Counsel had no written questions to submit, but was allowed to give orally an "offer of proof" of what the Hotel Association would have established if an opportunity for cross-examination had been granted.[4] Admitting that Mr. Bary had not been contacted until September 7, such counsel also requested that the hearing be adjourned until November 9. This adjournment would give the Authority time to prepare, and for Mr. Bary to review, data which counsel said were necessary to examine the reasonability of rates.[5] Counsel and Mr. Bary then stated that without such data the Hotel Association was unable to demonstrate the unreasonableness of the proposed rates.[6]

Following the hearings, the Authority determined that the rates it had proposed the previous December were reasonable. The Authority then filed a motion in the district court to vacate the injunction. The district court, after considering the Hotel Association's allegations of substantive and procedural infirmities, vacated the injunction by its October 1972 order.

## II. PROCEDURAL ISSUES

The Hotel Association argues either that the September 1972 hearings did not comply with 30 V.I.C. § 105 (a) (12)

---

[2] Transcript of September 13 hearing at Christiansted, at 74–75; September 29 hearing on Motion to Vacate Injunction, at 7–9.

[3] Transcript of September 13 hearing at Christiansted, at 7–12.

[4] Id. at 51–57.

[5] Id. at 59.

[6] Id. at 63, 67–71.

as interpreted by this court in deciding the previous appeal or that, assuming compliance, the statute itself fails to provide the due process of law required by 48 U.S.C. § 1561 (1970). Specifically, the Hotel Association urges that the notice of the hearings and the prior dissemination of the engineering studies were inadequate; that these deficiencies were perpetuated by the denial of the adjournment it requested; that the hearings themselves should have been trial-type, rather than legislative-type; that they should have been conducted by an impartial hearing officer; and that in making its final decision the Authority improperly relied on evidence not in the record.

■ "Whether [due process] requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account." Hannah v. Larche, 363 U.S. 420, 442 (1960). Accord, Goldberg v. Kelly, 397 U.S. 254, 263 (1970); Marine Space Enclosures, Inc. v. Federal Maritime Commission, 420 F.2d 577, 589–90 (D.C. Cir. 1969).[7]

While this court, in its prior opinion, did not state precisely how many days in advance the schedule of the new hearings had to be announced or the reports disseminated, it stressed the importance of notice and dissemination adequate under the circumstances. To be considered, for example, was the complex nature of the data.

■ The Hotel Association now complains that notice of about one month was too short. What the Hotel Association

[7] We note that the Authority's decision as to rates concerns rates which the members of the Hotel Association must pay. That factor distinguishes this case from cases such as Morgan v. United States, 298 U.S. 468 (1936), where an arm of the Government fixed prices that regulated persons could *charge to customers*. The distinction is that the latter situation is much more fraught with the potential for taking without just compensation and, consequently, places heavier demands on procedural due process. We recognize, however, that there could be such a taking in the present situation.

in effect asks us to ignore is the district court's injunction which had been stayed for only ten months. As of June 28, when this court handed down its affirmance of that injunction, it was clear to all concerned that the Authority would have to hold new hearings. Moreover, the July 5th press release was sufficient to warn the Hotel Association of the need to retain its expert. Thus, the Hotel Association has only itself to blame for waiting until the end of August before seeking an expert qualified to present its case. Similarly, the question whether or not the public had enough time to evaluate the three engineering studies should be considered in light of the ability of the public under these circumstances to have been ready for the reports. We are not prepared to reverse the decision of the district court and rule as a matter of law that notice and dissemination were inadequate.

The Hotel Association's request for a two-month adjournment was properly denied, particularly since the Hotel Association did not make the request sooner, for example, when the schedule of meetings was announced, but at the last meeting held. Moreover, the argument the Authority presented to the district court, that any additional delay would seriously hamper the sale of new bonds, is a persuasive factor.[8]

The Hotel Association's most telling argument is that the hearings should have been conducted not as legislative hearings but as adversary proceedings. The chief difference between the two modes as regards this case is that a trial-type hearing typically permits oral cross-examina-

---

[8] September 29, 1972, hearing on Motion to Vacate Injunction, at 9. Counsel for the Authority reiterated the desirability of a prompt resolution in oral argument before this court. Apparently one practical, and perhaps legal, requirement of selling these municipal bonds is an opinion letter from counsel that there is no litigation in progress which would materially affect the bonds.

557

tion of witnesses.[9] Our earlier opinion did not decide this question.

The Administrative Procedure Act, 5 U.S.C. § 551 et seq. (1970), is instructive. Rule-making proceedings are controlled by § 553, which requires only that interested parties be given adequate notice of the proposed rule, see § 553(b), and "an opportunity to participate in the rule making through submission of written data, views or arguments with or without opportunity for oral presentation," § 553(c). The procedure for adjudication is set out in §§ 554 and 556, under which "[a] party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts," § 556(d). If the Administrative Procedure Act governed the Authority's rate-making, the appropriate proceeding would be rule-making, because the rates in question have only prospective application. § 551(4); Law Motor Freight, Inc. v. CAB, 364 F.2d 139, 143–44 (1st Cir. 1966); see Jones v. District of Columbia, 323 F.2d 306, 308–09 (D.C. Cir. 1963).[10]

A second distinction which has been relied on by the federal courts is whether the proposed agency action affects a small or a large number of persons. Compare Bi-Metallic Investment Co. v. State Board of Equalization, 239 U.S. 441 (1915), with Londoner v. Denver, 210 U.S. 373 (1908). The two rationales underlying this distinction are that decisions affecting large numbers of persons are likely to be more concerned with general policies than with spe-

---

[9] The Hotel Association also is dissatisfied with the failure of the testimony to be sworn. Because the persons who testified did so in their professional capacities, it does not seem particularly significant that they were not under oath.

[10] Law Motor Freight also holds that, as regards setting agency policy for the future, 5 U.S.C. § 553 provides due process of law. Accord, NLRB v. Delaware Valley Armaments, Inc., 431 F.2d 494, 499 (3d Cir. 1970); California Citizens Band Association, Inc. v. United States, 375 F.2d 43, 50 (9th Cir. 1967).

cific facts and that permitting many persons to cross-examine each witness would make proceedings totally unmanageable. See United States v. Florida East Coast Railway Co., 410 U.S. 224, 41 U.S.L.W. 4247 (U.S., Jan. 22, 1973). In the present case, of course, the proposed increases affected every person in the Virgin Islands. We do not know, however, that there would have been a multitude of cross-examiners at the September hearings if cross-examination had been available.

A third factor, somewhat overlapping the second, is whether the facts in question are "legislative" or "adjudicative." See 1 K. C. Davis, Administrative Law Treatise, § 702 (1958). That is, will the agency decision depend chiefly on policy considerations or on specific, especially historical facts which are provable or disprovable? The Authority's decision here appears to have been made, as 30 V.I.C. § 105(a) provides, in reliance on both types of facts—for example, the costs of providing electric service to its various classes of customers and "making the benefits [of water and electric power systems] available to the inhabitants of the Virgin Islands in the widest economic manner consistent with sound fiscal management, and by this means to promote the general welfare and increase commerce and prosperity. . . ." § 105(a).

While Professor Davis would thus suggest that cross-examination would be appropriate at least as to the adjudicative facts, a number of courts have held in cases which, like the one before us, involved complex and technical factual controversies, that written submissions, possibly supplemented by oral argument, suffice. United States v. Florida East Coast Railway Co., supra; Phillips Petroleum Co. v. F. P. C., 475 F.2d 842 (Nos. 71-1659, 71-1739, 72-1134, 72-1167, 10th Cir., Feb. 20, 1973); National Air Carriers Association v. CAB, 436 F.2d 185, 191–94 (D.C. Cir. 1970); American Airlines, Inc. v. CAB, 359 F.2d 624

(D.C. Cir. 1966); cases cited note 10. One recent case countenances the restriction that questions be submitted in writing. International Harvester Co. v. Ruckelshaus, No. 72-1517 (D.C. Cir., Feb. 10, 1973), slip opinion at 18–23. On the other hand, the absence here of any specific statutory procedures such as the Administrative Procedure Act necessitates greater leeway than those courts had.

The present case does not compel us to hold that cross-examination will never be required in hearings under 30 V.I.C. § 105(a)(12).[11] Instead, we rely on the failure of the Hotel Association to have demonstrated the inadequacy of written questions, which were permitted. The Hotel Association could easily have informed itself of this aspect of the Authority's procedures by attending the September 11 meeting. In fact, a representative of the Hotel Association did attend the September 12 meeting on St. Thomas and no doubt could have told counsel in time to prepare for the September 13 hearing that questions had to be in writing. We have carefully examined the Hotel Association's "offer of proof" at the September 13 hearing, and no reason appears to us that the points there raised could not have been formulated in written questions. Consequently, we hold that the Hotel Association has not shown that it was prejudiced, and on this basis we decline to reverse the district court. See Woodbury v. McKinnon, 447 F.2d 839, 844 (5th Cir. 1971); Citizens for Allegan County, Inc. v. FPC, 414 F.2d 1125, 1134 (D.C. Cir. 1969).

---

[11] This court is reluctant to hold that cross-examination is never needed, since the Authority has such broad discretion not subject to judicial review, see 465 F.2d at 1274, and since, in the view of several commentators, cross-examination of experts on technical matters can contribute significantly to the decision-making process. Robinson, The Making of Administrative Policy: Another Look at Rulemaking and Adjudication and Administrative Reform, 118 U. Pa. L. Rev. 485, 521–24 (1970); Spritzer, Uses of the Summary Power to Suspend Rates: An Examination of Federal Regulatory Agency Practices, 120 U. Pa. L. Rev. 39, 95–97 (1971); Comment, Public Participation in Federal Administrative Proceedings, 120 U. Pa. L. Rev. 702, 743–44 (1972).

However, as noted at page 10 above, several federal cases have held that cross-examination is not mandated in such a situation.

The Hotel Association's other two procedural claims can be quickly disposed of. First, it did not appear that the officials who conducted the hearings in any way intimidated counsel for the Hotel Association or otherwise deprived it of privileges available to other participants. Moreover, because the Board of the Authority had the responsibility for the final decision on the rate increases, it is not at all evident how having a trial examiner take testimony would have altered that decision in any way. Second, in claiming that the Authority went beyond what was in the record at the hearings, the Hotel Association relies on certain language in the resolution in which the Authority adopted the increases. We find that the Hotel Association's interpretation of this language is contrary to its obvious meaning.

### III. SUBSTANTIVE ISSUES

The Hotel Association contends that the Authority did not have adequate information on which to determine whether or not the rates were reasonable. The essence of this argument is that the Authority does not know how to allocate various expenses between water and power distribution and does not know how much it costs it to supply power to the various types of power users. However, the three engineering studies introduced at the hearings seem to provide just this type of information. The Hotel Association has clearly failed to demonstrate the type of statutory violation subject to review by this court. See V.I. Hotel Association v. V.I. Water & Power Authority, supra, 465 F.2d at 1274.

Finally, we note that the Hotel Association did not attempt to establish in the Authority's September 1972 hearings or in the subsequent district court proceeding, and does not now urge, that the increase in electric rates is confiscatory. At the district court proceeding held on Decem-

ber 21, 1971, where the Hotel Association challenged the first set of hearings held by the Authority, there was uncontradicted testimony by various witnesses that the electric power bills of Virgin Islands hotels accounted for between four and eight percent of all operating costs (including debt service). See N.T. 136, 143, 145–46, 153. With the proposed increase in mind, the district court at that time computed that the rate increases would increase overall operating costs by about two percent, an amount which it concluded was not going to put the hotels out of business. N.T. 175–76.[12]

The October 3, 1972, order of the district court will be affirmed.

---

ADAMS, *Circuit Judge*, concurring

I concur in the result reached by the majority opinion in this case.

The appellant raises two contentions in this appeal: (1) that the procedures are inconsistent with the due process clause of the Constitution, and (2) that the procedure employed by the Virgin Islands Water & Power Authority contravenes the statute under which the rate increases were to be approved.

The opinion in United States v. Florida East Coast Railway Co., 410 U.S. 224, 41 U.S.L.W. 4247 (U.S., Jan. 22, 1973) is the most recent pronouncement by the Supreme Court on the type of proceeding acceptable when an administrative agency promulgates a new rate schedule. The opinion makes clear that, at this time, there is no requirement of a traditional adversary hearing in a broad rate-

---

[12] The Hotel Association made no attempt to offer similar data at the September 1972 district court hearing.

making context; such a deficiency is not violative of due process.[1]

In the present case, we are dealing with rate-making proceedings conducted pursuant to a statutory plan of the legislature of the Virgin Islands, as interpreted by this Court. Virgin Islands Hotel Ass'n v. Virgin Islands Water & Power Authority, 465 F.2d 1272 (3d Cir. 1972). The import of our earlier decision was that in rate-making proceedings pursuant to the statute in question a "meaningful hearing"[2] must be afforded those who would challenge the proposed rates. The parameters of such a hearing have not yet been delineated in any particularity.

Although as stated above, the traditional adversary "trial-type" proceedings do not appear to be mandated by the Constitution, I believe that in matters as important as the establishment of utility rates for large groups of citizens and businesses, a greater degree of precision and equity can be established when those opposing the proposed rates have an adequate opportunity to review the proposal with its supporting data, and an occasion to test the proposed rate and its underlying bases through the medium of cross-examining those responsible for its promulgation.

---

[1] In United States v. Florida East Coast Ry., supra, the railroad challenged the establishment by the Interstate Commerce Commission of incentive per diem rates on freight cars. These rates were promulgated after a hearing which did not include several of the elements of an adversary proceeding. Upholding the implementation of the rates, the Court stated that the Commission's procedures satisfied the requirements of the Administrative Procedure Act, 5 U.S.C. § 551 et seq. and were "not inconsistent with prior decisions of this Court." 41 U.S.L.W. at 4254. Several of these earlier decisions, e.g., Morgan v. United States, 304 U.S. 1 (1938); Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292 (1937); ICC v. Louisville & Nashville R. Co., 227 U.S. 88 (1913), had been thought by some to indicate that due process in ratemaking procedures included a requirement of "trial-type" hearings. Justice Douglas, dissenting in Florida East Coast Ry. Co. asserted:

"I do not believe it is within our traditional concepts of due process to allow an administrative agency to saddle anyone with a new rate, charge, or fee without a full hearing that includes the right to present oral testimony, cross-examine witnesses and to present oral argument." 41 U.S.L.W. at 4254.

[2] 465 F.2d at 1275.

Perhaps in the context of utility rate-making these would be central ingredients of a truly "meaningful" hearing.[3]

The proper resolution of this case, however, does not require that we reach the more difficult question, i.e., were the proceedings in this case so deficient so as not to comport with the concept of "meaningful hearing." As the majority opinion points out, counsel for the Hotel Association did not object to the amount of time allotted for study of the proposal at the time of its dissemination. In addition, counsel did not establish, certainly on the record, the various inquiries or lines of inquiry the Hotel Association would have propounded had they been given the opportunity to cross-examine the proponents of the rate, nor did counsel avail himself of what opportunity for questioning was afforded him.

For these reasons, I concur in the result reached in this case.

---

[3] An impartial presiding officer at any proceeding would also appear to be an important element in insuring a "meaningful" hearing. In the present case the proceedings were chaired by the Vice-Chairman of the Water & Power Authority with the aid of an Assistant Attorney-General of the Virgin Islands. Although in view of the disposition of this case, this factor does not render these hearings other than a "meaningful hearing," my concern with an arrangement that places the control of the meeting in the hands of the proponent of the rate increase, and the proponent's counsel, must be noted.